849 F.2d 606
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gina RIVERS; Kenneth Cooper, Plaintiff-Appellant,
v.
STANCIU MANAGEMENT INC., individually and d/b/a Hillwood
Manor Apts.; David L. Stanciu; John F. Dolan; Donna D.
Stanciu, individually and as officer of Stanciu Management
Inc.; Richard Cegelis,, individually and as resident
manager of Hillwood Manor Apts.; John J. Murphy,
individually and an assistant manager of Hillwood Manor
Apts., Defendant-Appellee.
 No. 87-1576.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 10, 1988.
Decided: June 13, 1988.
 
 Avery S. Friedman (Rachel S. Susz, on brief), for appellants.
 Francis J. Prior, Jr. (Siciliano, Ellis, Dyer & Boccarosse, on brief), for appellees.
 Before HARRISON L. WINTER, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Gina Rivers and Kenneth Cooper, black citizens, sued their corporate landlord, and its principals and agents, under the Fair Housing Act, 42 U.S.C. Secs. 3601 et seq., the Civil Rights Act of 1870, 42 U.S.C. Sec. 1981, and the Civil Rights Act of 1866, 42 U.S.C. Sec. 1982, alleging that they had been discriminated against in rental standards and criteria for renting at the Hillwood Manor Apartments in Northern Virginia because of their race. Suit was filed on August 1, 1986. The case was tried to a jury, and at the close of plaintiffs' case, the district court granted a motion for a directed verdict for defendants. It ruled that plaintiffs had failed to adduce legally sufficient evidence of racial discrimination to submit to the jury.
 
 
 2
 Plaintiffs appeal and we affirm.
 
 I.
 
 3
 Briefly stated the facts show that Ms. Rivers sought to move into the apartment complex in June 1985. She, Cooper and the then manager, Jack Street, discussed finances and the relationship between her and Cooper. She was told that if Cooper intended to remain in the apartment for more than thirty days, he must file a separate application to be a lessee.
 
 
 4
 Ms. Rivers' application to be a lessee was approved, and she moved into the apartment in July 1985. About a week later, she received a blank rental application, and, upon inquiry, she was told that it was for Cooper if he intended to stay more than thirty days. When she said Cooper would stay more than thirty days but that he was not employed, Street indicated that Cooper should not submit the application until he was employed.
 
 
 5
 Sometime before August 1985, Street was replaced by Richard Cegelis. Initially Cegelis sent Ms. Rivers a notice of lease violation because he learned that Cooper was living in the apartment but was not an authorized tenant. He subsequently agreed, however, that Cooper, who meanwhile had found employment, could apply for tenancy. Cooper did apply, but his application was rejected because he could not establish individual financial responsibility to pay the prescribed rent. Specifically Cooper had been employed only one day at $5.00 per hour, he had been unemployed for four months, he had no credit history and he had falsely represented that he had paid the rent during his prior residency with his mother.
 
 
 6
 Various discussions about how to establish Cooper as an acceptable credit risk ensued, including an offer to let Cooper stay if he and Ms. Rivers were married, so as to create legal responsibility of each for the debts of the other. None of the various proposals to solve the problem of Cooper's acceptability was mutually satisfactory, and Cooper was required to vacate the premises by September 30, 1985 as a condition of Ms. Rivers' right to continuance occupancy. Cooper moved back into the apartment after suit was filed, and he and Ms. Rivers have resided there since.
 
 II.
 
 7
 Although the district court did not rule on the question, we hold that plaintiffs' claim, if any, under the Fair Housing Act is time-barred. That Act requires suit to be filed "within one hundred and eighty days after the alleged discriminatory housing practice occurred," 42 U.S.C. Sec. 3612(a). Here, the alleged act of discrimination was requiring Cooper to vacate the premises by September 30, 1985, and suit was not filed until August 1, 1986, approximately eleven months later.
 
 
 8
 We reject plaintiffs' argument that the alleged violation was a continuing one. The fact that Ms. Rivers was forced to live apart from Cooper was at best continuing harm from a discrete act of discrimination.
 
 III.
 
 9
 We also agree that plaintiffs did not adduce legally sufficient evidence to permit the jury to find a violation of Sec. 1981 or Sec. 1982. Plaintiffs were unable to prove that in any other instance, regardless of their race, defendants had permitted unmarried, unrelated adults, who had no definite and immediate plans to marry, to live together on the premises for more than thirty days without qualifying as tenants, or that defendants had treated as credit-worthy and qualified to be a tenant any person lacking the financial responsibility of Cooper.
 
 
 10
 During the time that Ms. Rivers, Cooper and defendants were negotiating over Cooper's right to remain, Cooper and Ms. Rivers made complaints to and sought assistance from the Fairfax Human Rights Commission and it, in turn, sent testers to Hillwood Manor to see if they were acceptable as prospective tenants. There was evidence, that a white tester, who provided financial data about his income and that of the woman who would live with him, was told "you're white, All-American, you're in." While we unquestionably think that the remark was both tasteless and racist, we do not think that standing alone--and we perceive no other evidence of discrimination--it suffices to submit plaintiffs' case to a jury.
 
 
 11
 AFFIRMED.